**AUSTIN v. UNITED STATES et al.**

**No. 7873.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 16, 1942.

---

See, also, 40 F.Supp. 777.

Edward H. S. Martin, of Chicago, Ill., for appellant.

Julius C. Martin, Asst. Atty. Gen., Keith L. Seegmiller, of Washington, D. C., Arthur Roe, U. S. Atty., of East St. Louis, Ill., Wm. M. Lytle, Asst. U. S. Atty., of Chicago, Ill., and Wilbur C. Pickett, of Washington, D. C., for appellee.

Chauncey S. Conger and Ivan A. Elliott, both of Carmi, Ill., James G. Gullett, of Elizabethtown, Ill., and Noah Gullett, of Springfield Ill., for intervenor-appellees.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, the named beneficiary in a policy of war risk insurance on the life of Earl Warren Austin, sued defendant, alleging that the insured died on March 20, 1939, while the policy was in force. The defendant and intervening petitioners interposed an affirmative defense and moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The District Court sustained the motion, entered judgment in favor of the administrator of the estate of the insured and that plaintiff take nothing by her suit. From that judgment this appeal is prosecuted.

The administrator of the estate of the insured by his intervening petition, and the Government although acknowledging

liability for the proceeds of the policy met the complaint with an amended answer, asserting that the plaintiff was not entitled to the proceeds of the policy because she had murdered and had been convicted of the murder of the insured. The plaintiff contended she was unjustly convicted and insisted she was entitled to retry that issue in this case without regard to the conviction in the criminal case. The District Court held that the fact that the plaintiff had murdered the insured was established by the record of the criminal proceedings showing her conviction of such murder, and that by her admission of the conviction she was estopped from receiving and had forfeited all her rights to any part of the insurance.

The facts established by the pleadings are that in a criminal action instituted by an indictment in the Circuit Court of Hardin County, Illinois and on change of venue, tried in the Circuit Court of White County, Illinois, plaintiff was tried and found guilty of murdering the insured, her husband, and was sentenced to the Illinois State Penitentiary for Women, where she is now confined. On appeal the conviction and judgment was affirmed. People v. Austin, 374 Ill. 28, 27 N.E.2d 830.

■ At the outset we are met with the contention that the allegations in the defendant's answer and intervenor's petition, that plaintiff feloniously caused the death, and did feloniously kill and murder the insured, are mere conclusions, furnishing no ground for a summary judgment against the plaintiff. In support of this contention, she argues that in murder cases there are many means by which the killing may have been accomplished, namely, by shooting, stabbing and poisoning, and the defense in any one of those cases would be different from the defense in any one of the others. There can be no question that such is the rule in an indictment for homicide, but that rule is not applicable here and we do not deem it reasonable to condemn the answer and intervening petition because they failed to allege in specific language the means by which the murder was accomplished. Here the question was her conviction of murder. It was sufficient

that the allegations be stated generally. See Kelley v. Baggott, 273 Ill.App. 580, and Filmore v. Metropolitan Life Ins. Co., 82 Ohio St. 208, 92 N.E. 26, 28 L.R.A.,N. S., 675, 137 Am.St.Rep. 778.

The point is also made that plaintiff's conviction of murder is no evidence of the fact of murder. The argument is that a judgment in a criminal proceeding can not be read in evidence in a civil action to establish any fact there determined. In support of the argument, the cases in the footnote are cited.[1] These we have considered, but we are of the opinion that those cases have reference to a fact upon which the judgment in the criminal proceedings rested, and the legal consequences contended for were recognized as flowing, if at all, solely from such fact, and not from the judgment itself.

■ The rigid rule of exclusion of judgments in criminal cases as evidence in civil cases involving the same facts has been relaxed in recent years by some courts in particular cases. Thus where a party to a civil case has previously been convicted in a criminal case of a crime relating to the same factual situation which is in issue in the civil case, it has sometimes been held that the record of his conviction is admissible against him, on the ground of estoppel. New York Life Ins. Co. v. Murdaugh, 4 Cir., 94 F.2d 104. See, also, Schindler v. Royal Ins. Co., 258 N.Y. 310, 179 N.E. 711, 80 A.L.R. 1142; and Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387.

In Eagle, Star, etc., v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490, the court discussed the rule that the record of a conviction or of an acquittal, is not conclusive of the facts on which it is based in any civil action, citing 2 Freeman on Judgments, § 653. The court then stated that it was perfectly logical to hold that if the offender had been acquitted in the criminal prosecution, that acquittal should not bind another party who, for a personal injury arising out of the same occurrence, seeks redress in a civil action, because the prosecution may have failed merely because the guilt of the accused was not proved beyond any reasonable doubt. This rea-

---

[1] Chantangco v. Abaroa, 218 U.S. 476, 31 S.Ct. 34, 54 L.Ed. 1116; Tait v. Western M. R. Co., 289 U.S. 620, 53 S. Ct. 706, 77 L.Ed. 1405; Burt v. Union Central, etc., 187 U.S. 362, 23 S.Ct. 139, 47 L.Ed. 216; Gellman v. L. Karp & Sons, Inc., 7 Cir., 109 F.2d 391; Illinois Central, etc., v. Quirk, 51 Ill.App. 607; McDonald v. Stark, 176 Ill. 456, 52 N.E. 37; Young v. Copple, 52 Ill.App. 547; and Schreiner v. High Court, etc., 35 Ill.App. 576.

son, however, fails where there is a conviction, and the fact of guilt has been judicially determined. The court said (140 S.E. page 316): "We confess our inability to perceive * * * why the accused person himself should not be * * * bound * * * by the result of the prosecution, if adverse to him. He has had his day in court, with the opportunity to produce his witnesses, to examine and cross-examine the witnesses for the prosecution, and to appeal from the judgment."

In Diamond v. New York Life Ins. Co., 7 Cir., 50 F.2d 884, 886, the appellants contended that a judgment of conviction of murder in a criminal proceeding was not admissible in a civil action to establish the fact that the accused committed the murder for which he was convicted. The proof was that the insured had been indicted, tried and convicted for murder. In discussing the question Judge Evans of this court said: "The decision in Burt v. Union Central Life Ins. Co., 187 U.S. 362, 23 S.Ct. 139, 141, 47 L.Ed. 216, settles the question. * * * the question of the admissibility of this judgment and the verdict upon which it was based was squarely presented and decided."

The Burt case, supra, was an action to recover on a life insurance policy. There, as here, it was contended that the person convicted of murder, had not in fact committed the murder and that he was unjustly convicted; there, as here, it was contended that the record of the conviction was not conclusive; the court, however, held that the criminal prosecution was an adjudication of the insured's guilt.

In Illinois a judgment may be offered in evidence in any case for the purpose of establishing the fact of its rendition and those legal consequences which result from the fact. Illinois Steel Co. v. Industrial Commission, 290 Ill. 594, 125 N.E. 252. In our case the defendant's answer and the intervenor's petition set up the judgment which resulted in plaintiff's conviction of the murder of the insured. That judgment imported verity and could not be collaterally contradicted. Burt v. Union Central Life Ins. Co. and Diamond v. New York Life Ins. Co., supra. We think no error was committed in holding the judgment was conclusive upon the plaintiff.

Finally, plaintiff contends that the murder of the insured by the beneficiary designated in a converted government life insurance policy, furnishes no reason for denying her recovery in view of the incontestable clause in the policy and in the statute. She insists that such a clause does not violate public policy and that such a defense is waived. Lee v. Southern Life, etc., 19 Ala.App. 535, 98 So. 696; Henderson v. First National Bank, 229 Ala. 658, 159 So. 212, and McAllister v. Fair, 72 Kan. 533, 84 P. 112, 3 L.R.A.,N. S., 726, 115 Am.St.Rep. 233, 7 Ann.Cas. 973.

That there is a well established public policy against payment of insurance to the murderer of the insured is beyond question. Our laws will not reward one for the commission of crime, and whenever the effect of the enforcement of a right which one would otherwise have, would be to give her an advantage by reason of her felonious act, the courts will decline to entertain it because it is contrary to the good order of society, and an encouragement to crime to allow a beneficiary who murders the insured to receive the benefits of the insurance. New York Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997; Illinois Bankers, etc., v. Collins, 341 Ill. 548, 173 N.E. 465; Filmore v. Metropolitan, etc., 82 Ohio St. 208, 92 N.E. 26, 28 L.R.A., N.S., 675, 137 Am.St.Rep. 778; Equitable, etc. v. Weightman, 61 Okl. 106, 160 P. 629, L.R.A.1917B, 1210; Schmidt v. Northern, etc., 112 Iowa 41, 83 N.W. 800, 51 L.R.A. 141, 84 Am.St.Rep. 323; Kascoutas v. Federal, etc., 189 Iowa 889, 179 N.W. 133; Johnston v. Metropolitan, etc., 85 W.Va 70, 100 S.E. 865; Metropolitan, etc., v. Shane, 98 Ark. 132, 135 S.W. 836; Anderson v. Life, etc., 152 N.C. 1, 67 S.E. 53; Slocum v. Metropolitan, etc., 245 Mass. 565, 139 N.E. 816, 27 A.L.R. 1517; 6 Cooley, Briefs on Insurance, 2nd, 5227 and Vance on Insurance, 392.

The policy does provide that it shall be incontestable except for fraud or nonpayment of premiums, and in § 518, 38 U.S.C. A., it is said that "Policies of insurance heretofore or hereafter issued shall be incontestable after the insurance has been in force six months from the date of issuance or reinstatement."

In the instant case, as we have already observed, the defendant is not denying liability, but, on the contrary, admits liability, insists that a murderer should not be permitted to receive the benefits of the insur-

ance, and argues that the incontestable clause is concerned merely with the liability of the insurer and does not relate at all to the disposition of the proceeds of the policy as between contesting claimants. In other words, the question is on the right to the fund as between the representative of the insured and the designated beneficiary.

In support of her contention, plaintiff's counsel argues that by the enactment of the statute, Congress established the controlling public policy, and he insists that by this statutory enactment it is the same as though Congress had expressly said that recovery of death benefits by a beneficiary who had murdered the insured shall not be against public policy. We think this contention is without merit. We do not believe that an act of Congress, having the primary purpose of restricting the grounds for denial of liability on an insurance contract had, as an incidental or implied purpose, the reversal of the established public policy against the payment of insurance to the murderer of the insured.

Equitable, etc. v. Weightman, supra, was an action to recover upon a policy on the life of one Gentry, who had been murdered by the designated beneficiary. The policy was incontestable except for suicide. Notwithstanding the policy was incontestable, the court held that the designated beneficiary, by the act of murdering the insured, had forfeited the right to take and keep the benefits of the policy, and said (160 P. page 631):

"The policy itself made no provision for a disposition of the liability, nor of its benefits, in the event of the murder of the insured by the beneficiary. In the absence of such a specific provision by the parties in their contract, the status of the parties must be ascertained by reference to the rules of law and equity applicable to the situation. The inherent essence and vitality of every contract are drawn from the legal and equitable atmosphere surrounding it. The law writes between the lines of every contract its own innumerable inhibitions and requirements. * * * When one person becomes the beneficiary of the contract of others, such beneficiary is an implied party to the agreement. Before he may accept the benefits of the contract, he must accept all of its implied, as well as express, obligations. * * * It is our conception of the law

that, when she accepted the position of beneficiary in the life insurance of Thomas J. Gentry, the law infused into the contract, as an essential part of it, an implied obligation upon her part that she would respect the intentions of the contract. The very strongest implied inhibition of the law was that she should not mature the benefits by her own criminal act. Every moment of the life of the contract, obedience to this inhibition was her obligation. When she criminally destroyed the life of her husband, she violated every intent of the contract. She abandoned the contract, and cannot claim its benefits."

We now proceed to consider the question as to the right of the intervenor to the insurance benefits.

The fact that public policy prevents the payment of the insurance benefits to the murderer does not void the insurance policy; the liability of the insurer is just the same when death is the result of murder as when it is produced by any other cause, and if there is any person who has a right to the benefits of the policy, his rights will be enforced. Johnston v. Metropolitan, etc., 85 W.Va. 70, 100 S.E. 865. In this case the intervening petitioner, Thomas H. Austin, claimed the fund as the personal representative of the insured. As such representative he was entitled to the fund. Anderson v. Life, etc., supra and Illinois Bankers, etc., v. Collins, supra. The court awarded the fund to the intervenor as administrator de bonis non of the estate of Earl Warren Austin, deceased. The judgment is correct, and it is affirmed.